FILED

18 MAY 14 PM 2:30

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 18-2-12171-0 SEA

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| OMEROS CORPORATION, a Washington corporation, | No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| LEONARD BLUM, an individual, | |
| Defendant. | |

Plaintiff Omeros Corporation ("Plaintiff" or "Omeros"), alleges as follows:

**PARTIES**

1.      Plaintiff Omeros Corporation is a biopharmaceutical company registered as a corporation in the State of Washington, with its principal place of business in Seattle, Washington.

2.      Defendant Leonard Blum is an individual who has resided on a regular part time basis in the State of Washington during the period of two years immediately preceding this filing.

COMPLAINT  – 1

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## JURISDICTION AND VENUE

3.      This Court has jurisdiction under RCW 4.28.185.  Venue is proper under RCW4.12.020.  Jurisdiction and venue are also proper based on the April 2016 Omeros Corporation Proprietary Information and Inventions Agreement executed by the parties.

## STATEMENT OF FACTS

4.      Defendant Blum was hired by Omeros into the position of Chief Business and Commercial Officer, in April 2016.

5.      Prior to commencement of employment, Blum signed an offer letter dated April 4, 2016, which stated that Omeros' offer of employment was contingent upon Blum's execution of an Omeros Corporation Proprietary Information and Inventions Agreement (PIAA), a copy of which agreement was enclosed with the letter.  After receipt of the offer letter and PIAA, Blum posed specific questions based on his review of the PIIA.

6.      At the time of commencement of his employment, Blum executed the offer letter and the PIAA, a copy of which PIIA is attached hereto as **Exhibit 1.**

7.      The PIIA executed by Blum contained a noncompetition provision, which provided as follows:

> **Noncompetition.**  During my employment with the Company and for one (1) year following the termination of my employment or relationship with the Company for any reason, I will not, without the Company's prior written consent, directly or indirectly work on any products or services that are competitive with products or services (a) being commercially developed or exploited by the Company during my employment or (b) on which I worked or about which I learned Proprietary Information during my employment with the Company.

8.      The PIIA executed by Blum contained a non-solicitation provision, which provided as follows:

COMPLAINT  – 2

**CORR CRONIN MICHELSON BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

**Non-solicitation of Employees, Consultants and Other Parties.** During my employment with the Company, and for a period of one (1) year following the termination of my employment with the Company for any reason, I will not directly or indirectly (a) solicit, induce, recruit or encourage any of the Company's employees or consultants to terminate their relationship with the Company, or attempt any of the foregoing, either for myself or any other person or entity or (b) solicit any licensor, customer, or licensee of the Company, that are known to me, to obtain from any source other than the Company any business, products or services available from or competitive with the products or services offered by the Company or under development as of the date of termination of my employment with the Company.

9.     The PIIA executed by Blum contained a confidentiality provision, which provided as follows:

I understand and agree that all Proprietary Information is the sole property of the Company. I hereby assign to the Company any rights I now have may acquire in such Proprietary Information. During and after my employment, I will hold in confidence and not directly or indirectly disclose or use any Proprietary Information, except as authorized by the Company as necessary for carrying out my duties for the Company. I agree not to make copies of such Proprietary Information except as authorized by the Company. Upon termination of my employment, or upon earlier request of the Company, I will return or deliver to the Company all tangible or electronic forms or copies of such Proprietary Information in my possession or control. These obligations with respect to Proprietary Information shall not apply to information that I can conclusively establish with written documentation: (i) was widely known to the public at the time I obtained the Proprietary Information or later becomes widely known to the public through no direct or indirect action on my part; (ii) was known to me prior to my employment or pre-employment relationship or association with Company; or (iii) that I later receive from a third party having the lawful right to disclose the same.

10.    The term "Proprietary Information" was defined in the PIIA executed by Blum, as follows:

As used in this Agreement, the term "Proprietary Information" means information or material not generally known or available outside the Company, or information or material entrusted to the Company by third parties, that I may obtain or create before or during the term of my employment, or obtain through the Company's resources or personnel after my employment. This includes, but is not limited to, Company Intellectual Property, other inventions, confidential knowledge, product ideas, techniques, processes, formulas, object codes, laboratory notebooks, data, treatment methods, clinical trial design criteria, protocols, case report forms (blank or including patient data), investigators' brochures, schematics, drawings, designs, models, samples, processes, algorithms, flow charts, mechanisms, research, development,

COMPLAINT – 3

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

regulatory, chemistry, manufacturing and controls information, assembly or installation information, business or marketing plans or strategies, forecasts, sales, pricing, customers, customer lists, customer data, investor names and lists, the duties, qualifications, performance levels and compensation of other employees, and/or cost or other financial data concerning any of the foregoing or the Company, its operations and its existing or reasonably foreseeable future business. Proprietary Information may be contained in material such as drawings, samples, procedures, specifications, reports, studies, customer or supplier lists, budgets, cost or price lists, compilations or computer programs, or may be in the nature of unwritten knowledge or know-how.

11.     In his position with Omeros, Blum has had access to a significant quantity of Proprietary Information, as that term is defined in the PIIA.

12.     In his position with Omeros, Blum led the company's sales, marketing, and business development for OMIDRIA® (phenylephrine and ketorolac intraocular solution) 1%/0.3%, which is Omeros' sole commercial drug product.

13.     On May 11, 2018, Blum resigned his position with Omeros, effective May 12, 2018.  Blum intends to accept and is in the final stages of negotiating the terms of a position with Eyepoint Pharmaceuticals, Inc. ("Eyepoint"), a corporation based in Watertown, Massachusetts, as General Manager of that company's U.S. Business, including among other duties leading the sales, marketing and commercial activities.

14.     Eyepoint's most advanced product is DEXYCU™ (dexamethasone injectable suspension) 9%, for which it has obtained approval from the U.S. Food & Drug Administration. Eyepoint is preparing to launch commercial sales of DEXYCU™ in the first half of 2019.

15.     Upon information and belief, in his capacity with Eyepoint, Blum will be leading the Eyepoint commercial team to commercially launch DEXYCU.

16.     Both Omeros' product OMIDRIA and Eyepoint's product DEXYCU include an anti-inflammatory agent to reduce inflammation following ocular surgery.  Both products were developed for, and are administered intraocularly, in connection with cataract surgery. Eyepoint's DEXYCU product is indicated for the treatment of postoperative inflammation

COMPLAINT  – 4

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    following ocular surgery.  Omeros' OMIDRIA product is indicated for the reduction of ocular

2    pain following cataract surgery or intraocular lens replacement, through reduction of

3    inflammation due to surgical trauma.

4           17.    Eyepoint's product DEXYCU is directly competitive with Omeros' product

5    OMIDRIA, within the meaning of the noncompetition provision of the PIIA executed by Blum.

6           18.    Blum's work on DEXYCU would violate the noncompetition provisions of the

7    PIIA, unless he first obtains Omeros' prior written consent to perform such work.  Omeros has

8    not consented to such work.

9           19.    Blum's solicitation of Omeros' customers in connection with sales of DEXYCU

10   would violate the non-solicitation provisions of the PIIA.

11          20.    Any use or disclosure of Omeros' Proprietary Information by Blum would violate

12   the confidentiality provisions of the PIIA.

13          21.    During his resignation, Blum indicated that he would not abide by the terms of the

14   non-compete.

15          22.    During his resignation, Blum indicated that he would not directly solicit Omeros

16   employees for one year, but later explicitly reserved the possibility of hiring Omeros' employees

17   and did not otherwise commit that he would not induce, recruit or encourage Omeros'

18   commercial employees or consultants to terminate their relationship with Omeros.  Because he

19   denies that the OMIDRIA and DEXYCU products are competitive, Blum also did not commit to

20   abide by his obligation to not solicit any licensor, customer or licensee of Omeros.

21          23.    The PIIA executed by Blum provided that Omeros is entitled to seek injunctive

22   relief, in addition to any other remedies it may be entitled to, in order to enforce the agreement,

23   as follows:

24          I acknowledge that violation of this Agreement by me may cause irreparable
           injury to the Company, and I agree that the Company will be entitled to seek
25

COMPLAINT  – 5

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    extraordinary relief in court, including, but not limited to, temporary
     restraining orders, preliminary injunctions and permanent injunctions without
2    the necessity of posting a bond or other security and without prejudice to any
     other rights and remedies that the Company may have for a breach of this
3    Agreement.

4        24.    The PIIA executed by Blum specified application of Washington law.

5                **First Cause of Action: BREACH OF CONTRACT**

6        25.    Plaintiff realleges and incorporates by reference paragraphs 1 through 24 above.

7        26.    The PIIA is a valid and binding contract between Plaintiff Omeros and Defendant

8    Blum.

9        27.    Blum agreed to abide by the terms of the PIIA, including but not limited to the

10   noncompetition, non-solicitation, and confidentiality provisions of the PIIA.

11       28.    Blum has breached the provisions of the PIIA, and/or will breach the provisions

12   of the PIIA if his employment with Eyepoint is not enjoined.

13       29.    Plaintiff Omeros has been damaged as a result of Blum's breach(es) of the PIIA

14   and/or will suffer damages if his employment with Eyepoint is not enjoined.

15       **Second Cause of Action: VIOLATION OF THE UNIFORM TRADE SECRETS ACT**
                              **(ch. 19.108 RCW)**
16
17       30.    Plaintiff realleges and incorporates by reference paragraphs 1 through 29 above.

18       31.    Omeros has developed proprietary information of the types set forth in the PIIA,

19   including but not limited to business or marketing plans or strategies, forecasts, sales, pricing,

20   reimbursement, customers, customer lists, and customer data.  Such proprietary information

21   derives economic value, actual or potential, from not being generally known to, and not being

22   readily ascertainable by proper means by, other persons who can obtain economic value from its

23   disclosure or use.  Omeros took reasonable efforts to maintain the secrecy of such proprietary

24   information, including requiring that Defendant Blum execute the PIIA as a condition of

25   employment.

COMPLAINT  – 6

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

32.     Defendant has misappropriated and/or will misappropriate Omeros' proprietary information if his employment with Eyepoint is not enjoined.

33.     Plaintiff Omeros has been damaged as a result of Defendant's misappropriation, and/or will suffer damages if Defendant's employment with Eyepoint is not enjoined.

### Third Cause of Action: INJUNCTIVE RELIEF

34.     Plaintiff realleges and incorporates by reference paragraphs 1 through 33 above.

35.     The wrongful conduct of Defendant Blum alleged above poses an imminent threat to Plaintiff Omeros, and, unless such wrongful conduct is immediately and permanently enjoined, Omeros will suffer actual and substantial injury.

36.     Monetary damages are insufficient to remedy Defendant's wrongful conduct because, unless Defendant's employment with Eyepoint is enjoined, Defendant will utilize and misappropriate Omeros' proprietary information, solicit employees or consultants of Omeros, and/or unlawfully compete, all in violation of the provisions of the PIIA.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1.     Enter a preliminary and permanent injunction against Defendant Blum enjoining Defendant from:

   a.     Commencing employment with Eyepoint within one year of termination of employment from Omeros;

   b.     Directly or indirectly performing any work, in an employee, consulting or other capacity, related to DEXYCU and/or any other products or services that are directly competitive with Omeros products or services for one year following the termination of Defendant's employment or relationship with Omeros;

COMPLAINT  – 7

**CORR CRONIN MICHELSON BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1               c.      Directly or indirectly soliciting any licensor, customer, licensee, employee

2 or consultant of Omeros with respect to DEXYCU and/or any other business, products or

3 services that are competitive with Omeros products or services for one year following the

4 termination of Defendant's employment or relationship with Omeros;

5               d.      Directly or indirectly disclosing or using any Omeros proprietary

6 information, except as authorized by Omeros while employed by Omeros; and

7               e.      Otherwise violating the express terms of the PIIA.

8     2.     Award monetary damages to Omeros in an amount to be shown at trial;

9     3.     Award exemplary damages to Omeros under RCW 19.108.030;

10     4.     Award Omeros its costs and reasonable attorneys' fees under RCW 19.108.040

11 and/or other applicable statute or court rule; and

12     5.     For such other and further relief as the Court deems just and proper.

13     Dated this 14th day of May, 2018.

                        CORR CRONIN MICHELSON
14                     BAUMGARDNER FOGG & MOORE LLP

15

16                     *s/ Emily J. Harris*
                     Steven W. Fogg, WSBA # 23528
17                     Emily J. Harris, WSBA # 35763
                     1001 Fourth Avenue, Suite 3900
18                     Seattle, WA 98154
                     Tel: (206) 625-8600
19                     Fax: (206) 625-0900
                     Email: sfogg@corrcronin.com
20                           eharris@corrcronin.com

21

22                     *Attorneys for Plaintiff Omeros Corporation*

23

24

25

COMPLAINT  – 8

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

777 ie14e714tn.002

# EXHIBIT 1

## OMEROS CORPORATION

## EMPLOYEE PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT

In consideration for my becoming employed by Omeros Corporation or its subsidiaries, affiliates, or successors (collectively, the "Company"), Leonard Blum hereby agree as follows:

1.    **Overall Duties.**  During my employment with the Company, I will perform for the Company such duties as may be designated by the Company from time to time.  I will devote my best efforts to the interests of the Company and will not engage in other employment or competitive activities without the prior written consent of the Company.

2.    **Company Intellectual Property.**

2.1    **Definitions.**  As used in this Agreement, the term "Intellectual Property" means discoveries, developments, concepts, designs, ideas, know-how, improvements, inventions, trade secrets and/or original works of authorship, and trademarks, whether or not patentable, copyrightable or otherwise legally protectable.  This includes, but is not limited to, any new product, apparatus, article of manufacture, biological material, method, procedure, process, technique, system, compound, formulation, composition of matter, design or configuration of any kind, or any improvement thereon.  As used in this Agreement, the term "Company Intellectual Property" means all Intellectual Property that I may solely or jointly create, conceive, develop or reduce to practice during my employment with the Company which (i) pertains to any current or planned line of business activity of the Company, (ii) was aided by the use of time, material or facilities of the Company, whether or not during working hours or (iii) relates to any of my work carried out for the Company, whether or not during normal working hours.

2.2    **Duty to Disclose and Company Ownership.**  I agree to promptly disclose all Company Intellectual Property to the Company, for no additional compensation.  All Company Intellectual Property shall be the sole property of the Company and its assigns to the maximum extent permitted by law (and to the fullest extent permitted by law shall be deemed "works made for hire"), and the Company and its successors and assigns shall be the sole owner of all patents, copyrights, trademarks, trade secrets and other rights in connection therewith.

2.3    **Assignment.**  I hereby assign and transfer to the Company, for no additional compensation, any right and title to and interest in Company Intellectual Property that I may have or acquire, including any copyrights and registrations and renewals therefor, any inventions, any United States, international and foreign patent applications filed on such inventions, the right to apply for all such patent applications in my name or in the name of the Company, such Company Intellectual Property to be held and enjoyed by the Company as entirely as I would have held and enjoyed had I not made this assignment and transfer.

2.4    **Assistance.**  I agree to provide all required or requested assistance to the Company to permit the Company, at its expense but at no additional compensation to me, in obtaining and enforcing the Company's full benefits, enjoyment, rights and title throughout the world in Company Intellectual Property, including but not limited to the review and execution of assignments confirming ownership by the Company, declarations, powers of attorney, and other documents, and assistance or cooperation in legal proceedings.  I hereby irrevocably designate the Company and its duly authorized officers and agents as my agent and attorney-in fact, to execute and file on my behalf any such applications and to do all other lawful acts to further the prosecution and issuance of patents, copyright and mask work registrations related to such Inventions.  This power of attorney shall not be affected by my subsequent incapacity.

Blum-4.docx
4/7/2016 3:37 PM

2.5     **Notice Required by Revised Code of Washington 49.44.140.** Any assignment of inventions required by this Agreement does not apply to an invention for which no equipment, supplies, facility or trade secret information of the Company was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) directly to the business of the Company or (ii) to the Company's actual or demonstrably anticipated research or development or (b) the invention results from any work performed by the employee for the Company.

2.6     I attach hereto as <u>Exhibit A</u> a complete list of all inventions or other Intellectual Property, if any, made by me prior to my employment with the Company that are relevant to any aspect of the Company's current and planned business, and I represent and warrant that such list is complete. If no such list is attached to this Agreement, I represent that I have no such inventions or other Intellectual Property at the time of signing this Agreement. If in the course of my employment with the Company, I use or incorporate into a product or process offered or under development by the Company an invention or other Intellectual Property not included in the Company Intellectual Property in which I have an interest, the Company is hereby granted a nonexclusive, fully paid-up, royalty-free, perpetual worldwide license of my interest to use and sublicense such invention or other Intellectual Property without restriction of any kind.

3.      **Confidentiality Obligation.**

3.1     **Definition**. As used in this Agreement, the term "<u>Proprietary Information</u>" means information or material not generally known or available outside the Company, or information or material entrusted to the Company by third parties, that I may obtain or create before or during my employment, or obtain through the Company's resources or personnel after my employment. This includes, but is not limited to, Company Intellectual Property, other inventions, confidential knowledge, product ideas, techniques, processes, formulas, object codes, laboratory notebooks, data, treatment methods, clinical trial design criteria, protocols, case report forms (blank or including patient data), investigators' brochures, schematics, drawings, designs, models, samples, processes, algorithms, flow charts, mechanisms, research, development, regulatory, chemistry, manufacturing and controls information, assembly or installation information, business or marketing plans or strategies, forecasts, sales, pricing, customers, customer lists, customer data, investor names and lists, the duties, qualifications, performance levels and compensation of other employees, and/or cost or other financial data concerning any of the foregoing or the Company, its operations and its existing or reasonably foreseeable future business. Proprietary Information may be contained in material such as drawings, samples, procedures, specifications, reports, studies, customer or supplier lists, budgets, cost or price lists, compilations or computer programs, or may be in the nature of unwritten knowledge or know-how.

3.2     **Duty to Protect Proprietary Information.** I understand and agree that all Proprietary Information is the sole property of the Company. I hereby assign to the Company any rights I now have may acquire in such Proprietary Information. During and after my employment, I will hold in confidence and not directly or indirectly disclose or use any Proprietary Information, except as authorized by the Company as necessary for carrying out my duties for the Company. I agree not to make copies of such Proprietary Information except as authorized by the Company. Upon termination of my employment, or upon earlier request of the Company, I will return or deliver to the Company all tangible or electronic forms or copies of such Proprietary Information in my possession or control. These obligations with respect to Proprietary Information shall not apply to information that I can conclusively establish with written documentation: (i) was widely known to the public at the time I obtained the Proprietary Information or later becomes widely known to the public through no direct or indirect action on my part; (ii) was known to me prior to my employment or pre-employment

Blum-4.docx
4/7/2016  3:37 PM

relationship or association with Company; or (iii) that I later receive from a third party having the lawful right to disclose the same.

4. **Ownership of Physical Property**. All documents, apparatus, equipment and other physical property in any form, whether or not pertaining to Proprietary Information, furnished to me by the Company or produced by me or others in connection with my employment shall be and remain the sole property of the Company, and will be returned to the Company upon request or upon termination of my employment, even if not requested.

5. **Non-solicitation of Employees, Consultants and Other Parties**. During my employment with the Company, and for a period of one (1) year following the termination of my employment with the Company for any reason, I will not directly or indirectly (a) solicit, induce, recruit or encourage any of the Company's employees or consultants to terminate their relationship with the Company, or attempt any of the foregoing, either for myself or any other person or entity; or (b) solicit any licensor, customer, or licensee of the Company, that are known to me, to obtain from any source other than the Company any business, products or services available from or competitive with the products or services offered by the Company or under development as of the date of termination of my employment with the Company.

6. **Noncompetition**. During my employment with the Company and for one (1) year following the termination of my employment or relationship with the Company for any reason, I will not, without the Company's prior written consent, directly or indirectly work on or with any products or services that are competitive with products or services (a) being commercially developed or exploited by the Company during my employment or (b) on which I worked or about which I learned Proprietary Information during my employment with the Company. As the Company's business is worldwide, I recognize that the restrictions in this Section 6 cannot be limited to any geographic area.

7. **No Conflicts**. I represent that my performance of all the terms of this Agreement as an employee of the Company does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by me in confidence or in trust prior to my becoming an employee of the Company, and I will not disclose to the Company, or induce the Company to use, any confidential or proprietary information or material belonging to any previous employer or others. I am not a party to and agree not to enter into any written or oral agreement that conflicts or interferes with the provisions of this Agreement. I have listed in Exhibit A any currently in force agreements I have entered into with prior employers or other third parties that purport to restrict my ability to work for competitive enterprises or on competitive products or services. I will not bring to my employment with the Company any materials or documents obtained from or belonging to a former employer except those documents listed in Exhibit A, which I have the unrestricted right to use and disclose without breach of any agreement or other obligation.

8. **At-Will Relationship**. I understand and acknowledge that my employment with the Company is and shall continue to be at-will, meaning that either I or the Company may terminate the relationship at any time for any reason or no reason, without further obligation or liability on the part of the Company.

9. **Miscellaneous**. This Agreement inures to the benefit of successors and assigns of the Company and is binding upon my heirs and legal representatives. My obligations under Sections 2 and 3 of this Agreement shall continue after my employment ends, and my obligations under Sections 5 and 6 of this Agreement shall continue for the periods noted in those sections.

9.1 **Remedies**. I acknowledge that my violation of this Agreement may cause irreparable injury to the Company, and I agree that the Company will be entitled to seek extraordinary relief in court,

Blum-4.docx
4/7/2016 3:37 PM

-3-

including, but not limited to, temporary restraining orders, preliminary injunctions and permanent injunctions without the necessity of posting a bond or other security and without prejudice to any other rights and remedies that the Company may have for a breach of this Agreement.

9.2 **Complete Agreement.** This Agreement supersedes any oral, written or other communications or agreements concerning the subject matter of this Agreement, and may be amended or waived only by a written instrument that I and a duly authorized officer of the Company have signed.

9.3 **Governing Law and Venue.** This Agreement shall be construed in accordance with and governed by the laws of the State of Washington, without giving effect to principles of conflict of laws. Jurisdiction over and venue of any suit arising out of or relating to this Agreement shall be exclusively in the state and federal courts of King County, Washington.

9.4 **Interpretation of Agreement.** If any provision of this Agreement is held to be unenforceable under applicable law, then such provision shall be construed and reformed to permit enforcement to the maximum extent permissible consistent with the parties' original intent, and the remainder of this Agreement shall be enforceable in accordance with its terms.

10. **Acknowledgment.** I certify and acknowledge that I have carefully read all of the provisions of this Agreement and that I understand and will fully and faithfully comply with such provisions. I reviewed this Agreement with an attorney of my choosing, or knowingly waived the opportunity to obtain independent legal advice. I understand that the Company's counsel represents the interest of the Company. I signed this Agreement freely and voluntarily.

**OMEROS CORPORATION:**      **LEONARD BLUM:**

By:

Title: VP, Patent and General Counsel      Dated: April 7, 2016

Dated: 4 / 9 / 2016

**Exhibit A**

Omeros Corporation

1.  The following is a complete list of all inventions or other Intellectual Property relevant to the subject matter of my employment by the Company that have been made or conceived or first reduced to practice by me, alone or jointly with others or which were known to me prior to my employment by the Company. I represent that such list is complete.

2.  ✗    I am not bringing any materials and documents of a former employer to the Company.

    ____    I propose to bring to the Company the following non-proprietary materials or documents of a former employer. I certify that I have the unrestricted right to use and disclose these without breach of any confidence, agreement or other obligation.

3.  ____    I have not entered into any agreements that remain in force with prior employers or other third parties that purport to restrict my ability to work for competitive enterprises or on competitive products or services.

    ✗    I have entered into the following agreements that remain in force with prior employers or other third parties that purport to restrict my ability to work for competitive enterprises or on competitive products or services.

    Confidential Separation Agreement and General Release with Theravance BioPharma.

    **LEONARD BLUM:**

    Dated: _April 7, 2016_

Leonard Blum
20160404